UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SPENCER HIGH HAWK,<br><br>Defendant. | 5:22-CR-50113-KES<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL |

Defendant, Spencer High Hawk (High Hawk), filed a Rule 29 motion for judgment of acquittal after a jury found him guilty, on September 8, 2023, of one count of aiding and abetting second degree murder. Docket 125; see also Docket 119. The United States opposes the motion. Docket 126. For the following reasons, the court denies High Hawk's motion.

## BACKGROUND

In a superseding indictment, a grand jury charged High Hawk with one count of aiding and abetting first degree murder, in association with the killing of Dominick Jealous of Him. Docket 93. A jury trial began on September 5, 2023. *See* Dockets 114. At trial, evidence was presented that included testimony from Akicita Fast Horse, who was present at High Hawk's home on the night Jealous of Him was killed and who himself sustained serious injuries. *See id.* at 2; 117-1 at 129–34. At the close of evidence and before the jury began deliberating, High Hawk made an oral motion for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure. *See* Docket 114 at

2. The United States orally opposed the motion, and the court denied High Hawk's motion for judgment of acquittal. *Id.* On September 8, 2023, the jury returned a verdict of guilty on the lesser-included offense of aiding and abetting second degree murder. Docket 119 at 1.

## DISCUSSION

### I. Legal Standard

Rule 29 allows convicted defendants to file a motion for judgment of acquittal after a jury returns its verdict. Fed. R. Crim. P. 29(c)(1). The jury verdict "must be upheld 'if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.' " *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) (quoting *United States v. Taylor*, 813 F.3d 1139, 1146 (8th Cir. 2016)). The Rule 29 standard is " 'very strict' and a jury's verdict should not be overturned lightly." *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007) (quoting *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005)).

The essential elements of a crime for which a defendant is found guilty may be proven by circumstantial or direct evidence. *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004). "Th[e] court views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." *Boesen*, 491 F.3d at 856 (citing *United States v. Water*, 413 F.3d 812, 816 (8th Cir. 2005)). "[T]he district court is not to weigh the evidence or assess the credibility of witnesses[]" but rather is to evaluate the evidence in the light most favorable

to the government to determine if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Baker*, 367 F.3d at 797.

## II. Whether sufficient evidence exists to sustain the guilty verdict

A jury found High Hawk guilty of one count of aiding and abetting second degree murder. Docket 119. This charge required the United States to prove beyond a reasonable doubt that High Hawk (1) unlawfully killed the victim, or aided and abetted the killing, (2) acted with malice aforethought, (3) that High Hawk is an Indian, and (4) that the offense took place in Indian country. *United States v. Cottier*, 908 F.3d 1141, 1146 (8th Cir. 2018). Proving aiding and abetting required a showing beyond a reasonable doubt that High Hawk knew that the killing of another was being committed or going to be committed, had enough advance notice of the extent and character of the killing that he was able to walk away from the killing before all elements of second degree murder were complete, knowingly acted in some way for the purpose of causing, encouraging or aiding the commission of the killing, and acted with malice aforethought. *See id.* at 1146–47; *Rosemond v. United States*, 572 U.S. 65, 81–83 (2014) (holding that defendant must have advance knowledge of the nature of the crime to be found guilty on a theory of aiding and abetting).

In his motion for judgement of acquittal, High Hawk argues that there was insufficient evidence presented at trial to sustain the charge of aiding and abetting second degree murder. Docket 125 at 1. First, High Hawk argues that there was no evidence presented to show he knew that the killing of another was being committed or going to be committed. *Id.* at 2. Second, High Hawk

argues that there was no evidence presented to show he had enough advance notice of the extent and character of the killing that he was able to walk away from the killing before all elements of second degree murder were complete. *Id.* at 2–3. Third, High Hawk argues that there was no evidence presented to show he acted with malice aforethought. *Id.* at 3.

### A. Whether sufficient evidence was presented to show High Hawk knew the killing of another was being committed or going to be committed

High Hawk argues that because Fast Horse testified that High Hawk was unaware there was going to be a fight until the dispute occurred, the first element of aiding and abetting second degree murder is not met. Docket 125 at 2. But this element requires only that High Hawk knew that a killing was being committed or going to be committed when he still had time to walk away from the offense, not that he knew it was going to be committed in advance of Fast Horse and Jealous of Him's arrival at the residence. *See Rosemond*, 572 U.S. at 78 n.9.

Fast Horse testified that High Hawk retrieved the silver bat only a short time after High Hawk's father, Acorn High Hawk, first menaced Fast Horse with the wooden bat. *See* Docket 136 at 14–16. Fast Horse also testified that while he was being beaten with the wooden bat by Acorn High Hawk, he could hear High Hawk beating Jealous of Him with the silver bat and Jealous of Him screaming. Docket 136 at 18–22, 32. Thus, a reasonable jury could conclude from Fast Horse's testimony that High Hawk knew the killing of another was being committed or going to be committed.

4

The government also introduced evidence that High Hawk messaged Aisha Jewel on Facebook and said that he "murdered" and "bodied" somebody. Docket 117-1 at 93–94. High Hawk also messaged that he is "looking at prison time" and that there was a witness who had escaped. *Id.* at 94. A reasonable jury could conclude that High Hawk's statements to Jewel further support that High Hawk was aware that a killing was being committed or going to be committed at the time of the killing.

High Hawk's testimony varyingly supports and refutes that he knew the killing of another was being committed or going to be committed. High Hawk testified that Acorn High Hawk confronted Fast Horse over a set of car keys and phone that he believed Fast Horse had stolen from him and that Acorn High Hawk began to menace Fast Horse and Jealous of Him by pointing the bat and banging it on the table. Docket 137 at 11–13. High Hawk further testified that Acorn High Hawk attempted to escort Fast Horse and Jealous of Him out of the home, and that a fight over the bat broke out between Acorn High Hawk and Fast Horse. *Id.* at 13–14. High Hawk testified that he told Jealous of Him not to get involved, but Jealous of Him struck High Hawk, and High Hawk knocked Jealous of Him unconscious. *Id.* at 14–17. High Hawk claimed that after Fast Horse escaped through the screen door, High Hawk went to the bathroom to get Jealous of Him a towel, and when he returned, he saw Acorn High Hawk beating Jealous of Him with the bat. *Id.* at 18–19. High Hawk asserted that he removed the bat from Acorn High Hawk, who then began stomping Jealous of

5

Him's head, at which point High Hawk pulled his father off of Jealous of Him. *Id.* at 20.

High Hawk's testimony conflicts with statements he made previously to Special Agent Ewan that were used to impeach his testimony at trial. High Hawk initially told Ewan that a third party assaulted Fast Horse and murdered Jealous of Him, which he later admitted was a complete fabrication. *Id.* at 24–25. At trial, High Hawk also acknowledged that he admitted to ground-pounding Jealous of Him, and that by ground-pounding he meant that he was "punching [Jealous of Him] over and over again" from above. *Id.* at 26.

The government correctly notes that "[m]uch of Defendant's theory of the case focuses on the credibility of [Fast Horse]." Docket 126 at 7. But "[t]he district court does not assess the credibility of witnesses or weigh evidence in deciding a motion for judgement of acquittal." *United States v. Magallon*, 984 F.3d 1263, 1288 (8th Cir. 2021). Thus, the court does not weigh the credibility of Fast Horse's testimony against that of High Hawk, and instead finds, based on the evidence presented at trial, including Fast Horse's testimony and parts of High Hawk's testimony, a reasonable jury could find that High Hawk knew that the killing of another was being committed or going to be committed.

B. **Whether sufficient evidence was presented that High Hawk had enough advance notice of the extent and character of the killing that he was able to walk away from the killing before all elements of second degree murder were complete**

High Hawk argues that there was insufficient evidence presented at trial to show he had advance notice of the extent and character of the killing to be able to walk away before all the elements of second degree murder were

6

complete. Docket 125 at 2–3. To the contrary, the court finds Fast Horse's testimony sufficient for a rationale jury to conclude that High Hawk had such notice. Fast Horse testified that High Hawk was beating Jealous of Him at the same time as Fast Horse shielded himself from Acorn High Hawk. Docket 136 at 18–19. Moreover, Fast Horse testified that when he was by the star quilt next to Jealous of Him, he could hear the "ding[ing]" of the bat High Hawk wielded impacting Jealous of Him. *Id.* at 32. Fast Horse also testified that when he fled the home, Jealous of Him was still inside. *See* Docket 136 at 21–22.

Fast Horse's testimony supports that Jealous of Him was already being severely beaten before Fast Horse "broke out" of the home. *See id.* at 19–22. Thus, sufficient evidence was presented that a rationale jury could conclude that High Hawk had enough advance notice of the extent and character of the killing that he was able to walk away before the elements of second degree murder were complete. This conclusion is bolstered by High Hawk's testimony that he admitted to "ground-pounding" Jealous of Him to Special Agent Ewan, and his messages to Jewel wherein he confessed to murdering someone. *See* Dockets 117-1 at 93–94, 137 at 26.

**C. Whether sufficient evidence was presented to show High Hawk acted with malice aforethought**

High Hawk argues that there was insufficient evidence presented at trial to show he acted with malice aforethought. Docket 125 at 3. Malice aforethought is defined as "an intent, at the time of a killing, willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life." *United States v. Comly*, 998 F.3d

7

340, 343 (8th Cir. 2021) (quotation omitted). High Hawk argues that the evidence is insufficient to sustain the verdict because "there was insufficient evidence presented that Defendant's intent was to willfully take the life of anyone when he intervened." Docket 125 at 3.

High Hawk's argument misinterprets the malice aforethought requirement. The government is required to present evidence of malice aforethought "at the time the death-inducing acts took place." *United States v. Iron Crow*, 970 F.3d 1003, 1009 (8th Cir. 2020). That evidence may draw on events that took place before or after the killing occurred. *See id.* But the government is not required to prove High Hawk had the intent of malice aforethought at the precise moment he intervened in the fight. *See id.* It must instead prove that when the killing occurred, High Hawk acted with malice aforethought. *See id.* The government is also not required to prove that High Hawk intended to kill Jealous of Him, so long as it proves that he acted with a reckless disregard to whether Jealous of Him lived or died. *See Comly,* 998 F.3d at 343.

Fast Horse testified that while he was defending himself from Acorn High Hawk, High Hawk was striking Jealous of Him with the metal bat while Jealous of Him screamed. Docket 136 at 18–22, 32. High Hawk also testified that he admitted to Special Agent Ewan that at one point during the altercation he was repeatedly "ground-pounding" Jealous of Him. Docket 137 at 26. Moreover, in his conversation with Jewel, when asked why he murdered someone, High Hawk responded, "Idk Isha, no one fucks with my family," and "Ion Gon let

8

that shit slide." Docket 117-1 at 94. Thus, the evidence presented at trial was sufficient for a reasonable jury to conclude that High Hawk acted with an intent to kill or a callous and wanton disregard to human life.

## CONCLUSION

High Hawk's Rule 29 motion is denied. A reasonable jury could have found High Hawk guilty beyond a reasonable doubt based on the evidence presented at trial. Thus, it is

ORDERED that High Hawk's Rule 29 motion (Docket 125) is denied.

Dated November 27, 2023.

> BY THE COURT:
>
> /s/ *Karen E. Schreier*
> KAREN E. SCHREIER
> UNITED STATES DISTRICT JUDGE